9994

### UNION NAT. BANK OF COLUMBIA v. COOK *ET AL.*

(96 S. E. 484.)

1. BILLS AND NOTES—TRANSFER AS SECURITY—HOLDER FOR VALUE OF COLLATERAL.—The transfer of a promissory note as security for another note of the assignor makes the assignee a *bona fide* holder for value of the collateral security.

2. MORTGAGES — ASSIGNMENT AND DELIVERY — EFFECT ON MORTGAGE.— Assignment and delivery of a note carries with it the mortgage securing the note; the note being the principal and the mortgage the incident, and following the note in its delivery from one person to another.

3. BILLS AND NOTES—GENERAL INDORSEMENT—DELIVERY.—When a negotiable note payable to order is indorsed generally by the payee, the note and its incidents pass in the commercial world by delivery.

4. MORTGAGES—SATISFACTION BY MORTGAGEE.—Civ. Code 1912, secs. 1322, 3461, authorize and require a mortgagee to enter satisfaction of a mortgage of real estate only when he is the owner and holder of the instrument at the time and has received payment or satisfaction of the same.

5. MORTGAGES—MORTGAGEE AS BONA FIDE PURCHASER.—Where, while note and recorded mortgage made by wife to her husband were held by plaintiff before maturity as collateral security for note of the

husband and wife, defendants, discounting note of the husband and wife, took another mortgage on the land, relying on recorded satisfaction by the husband of the prior mortgage and his statement that it was paid, without demanding of him the possession of the mortgage or making inquiry as to its whereabouts, their mortgage was subordinate to the one held by plaintiff, since they had actual and constructive notice that it was in existence and not then due.

6. Mortgages—Transfer of Title—Common-Law Theory.—At common law, a real estate mortgage in its nature was analogous to a chattel mortgage, and on its execution the title to the land was transferred to the mortgagee; the conveyance to be void on performance of the condition.

7. Mortgages—Successive Mortgages at Common Law.—At common law, it was permissible for a mortgagor to execute on the same land any number of successive mortgages, which usually stood in priority according to their respective dates.

8. Mortgages—Suit for Redemption by Junior Mortgagee—Common Law.—At common law, a junior mortgagee had the right to sue for redemption of the premises from a senior mortgage, and by so doing could tack his junior mortgage to the senior mortgage and cut out one intervening.

9. Mortgages—Title—Statutory Theory.—Since 1791, when the legislature of the State enacted that a mortgage was only a lien on the land for payment of the debt even after default, and that the mortgagor held the legal title subject to the lien of the mortgage, until a foreclosure and sale of the mortgage and premises, the legal title is in the mortgagor or his heirs and assigns, subject to the lien of the mortgages according to their priority.

10. Mortgages — Foreclosure — Assignee of Prior Mortgage Not a Party.—A bank, assignee of a mortgage, was not bound to its prejudice by decree of foreclosure of another mortgage on the land rendered in an action to which it was not a party.

11. Mortgages—Foreclosure by Junior Incumbrancer.—A junior incumbrancer can bring an action of general foreclosure, either before or after sale in another action to which he was not a party, without alleging or proving a tender of the amount of the prior liens on the land; but it should appear to the Court that the junior incumbrancer has a substantial right to be protected, and his lien to be enforced for some practical purpose, and not merely to prosecute a fictitious cause of action, that is, it must appear *prima facie* that the land is worth more than prior incumbrances, and that in probability upon resale the proceeds will reach the junior incumbrancer's claim.

12. Mortgages—Mortgagee in Possession—Rents and Profits—Burden to Show Amount.—A mortgagee in possession is a trustee for the

mortgagor; the burden is on him to show the amount of rents and profits for which he must account; and in the absence of testimony it may be assumed that the rents and profits, less taxes, equal the interest on the amount of the mortgage debt and the costs of the action in which it was foreclosed.

Before PEURIFOY, J., Laurens.   Affirmed.

Action by the Union National Bank against Kate E. Cook and others.  Judgment for plaintiff, and defendants, J. C. Cox, and the Bank of Fountain Inn, appeal.

Statement: The cause was referred to Hon. F. P. McGowan, special referee, to take the testimony and report all issues.   The special referee filed his report, and upon exceptions thereto, filed by the defendants, the cause was heard before his Honor, Judge J. E. Peurifoy.   A decree was rendered by his Honor, confirming the report of the special referee.

Special referee, F. P. McGowan, made report herein as follows:

At the November term of Court the above stated action was referred to me to take the testimony and decide all the issues of law and fact.

In obedience to said order, I held a reference on the 15th day of January, 1917, and took the testimony which is herewith reported.   At a later day in January I held a reference and heard the arguments of the attorneys for plaintiff and for defendants.

Statement of Issues: The action was commenced in the Court of Common Pleas for the county of Laurens on March 9, 1916, and is ostensibly for the foreclosure of a mortgage of 160.85 acres of land situate in Laurens county in said State, executed by the defendants, Mrs. Kate E. Cook, on March 26, 1913, to her husband and codefendant, James I. Cook, and by him transferred to the plaintiff on said day.   The complaint seeks to have a receiver appointed and placed in control of the rents and profits of the premises and that the plaintiff's mortgage be foreclosed, the premises

sold, and proceedings applied to the amount secured by the different liens according to their date and legal priority. All of the defendants have been served with the summons and complaint and the Union Central Life Insurance Company has answered disclaiming any interest in the premises or to any right to be adjudicated in the action.

Conclusions of Fact: On the 29th day of May, 1912, Mrs. Kate E. Cook and her husband, Jas. I. Cook, executed to the Union Central Life Insurance Company of Cincinnati, Ohio, a mortgage upon 160.85 acres of land situate in Laurens county, in said State, to secure a debt of $2,500 due to said company, which mortgage was recorded in the office of the clerk of the Court of Common Pleas for the said county and State on the 5th day of June, 1912, in Book 39, p. 144.

On March 20, 1913, Kate E. Cook executed to the said James I. Cook  a promissory note in the sum of $2,000, as follows:

"$2,000.    Columbia, S. C., March 20, 1913.    On March 20, 1914, after date, for value received I promise to pay to the order of James I. Cook, two thousand dollars ($2,000), negotiable and payable at Union National Bank, of Columbia, South Carolina, with discount before, and interest after maturity at the rate of eight (8) per cent. per annum until paid, with ten (10) per cent. attorney's fees should this note be collected by law or through an attorney.    Kate E. Cook." Indorsed on back: "James I. Cook."

On the 26th day of March, 1913, the said Kate E. Cook executed to the said Jas. I. Cook, his heirs and assigns, a mortgage of 160.85 acres of land situate in said county and State, the same land as above described, which was recorded in the office of the clerk of the Court of Common Pleas for the county of Laurens, in said State, on the 27th day of March, 1913, in Book 45, p. 6.

Although Jas. I. Cook joined with Mrs. Kate E. Cook in the execution of the mortgage of the same land to the Union Central Life Insurance Company, Mrs. Kate E. Cook was

the owner in fee of the said land, and was the owner when she executed the mortgage to Jas. I. Cook on the 20th day of March, 1913, to secure the $2,000 note. No part of this note and mortgage has been paid.

On March 26, 1913, Jas. I. Cook and Kate E. Cook executed the Union National Bank a promissory collateral note in the sum of $1,500 due and payable to the said bank on January 15, 1914, and therein pledged Jas. I. Cook in the sum of $2,000 maturing March 20, 1914, as follows:

"$1,500.00. Columbia, S. C., March 24, 1913. Jan. 15, 1914, after date we or either of us promise to pay to Union National Bank, or order, the sum of fifteen hundred & no-100 dollars, value received payable at Union National Bank with discount before and interest after maturity at the rate of eight per cent. per annum. As collateral security for paymeint of the above note, and any other liability or liabilities to said Union Nat. Bank, due or to become due, or that may be hereafter contracted we have this day deposited with said bank note and mortgage of Kate E. Cook to Jas. I. Cook, for $2,000.00 maturing March 20, 1914. Power of sale of collaterals. Jas. I. Cook, Kate E. Cook."

Interest was paid on this note to November 16, 1914.

On the 26th day of March, 1913, the Union National Bank received this $1,500 note from Jas. I. Cook and Kate E. Cook and as collateral security to same the note and mortgage of Kate E. Cook to Jas. I. Cook in the sum of $2,00^ and paid to Jas. I. Cook the net proceeds of said securities the sum $1,404.08, and that the said Union National Bank is a *bona fide* holder of the said $2,000 note and mortgage of the said Kate E. Cook for value, and that there is now due the said Union National Bank thereon the sum of $1,963.50, as follows: Face of note, due January 15, 1914, $1,500; interest from November 16, 1914, $285; total, $1,785. Ten per cent. attorney's fee, $178.50; total, $1,963.50.

The $2,000 note and mortgage of Kate E. Cook were never out of the possession of the Union National Bank from the 26th day of March, 1913, to the present time.

On the 28th day of November, 1913, Jas. I. Cook executed to J. C. Cox a promissory note whereby he promised to pay J. C. Cox or order, on February 26, 1914, the sum of $1,800, at the Bank of Fountain Inn, for value received, with interest after maturity at the rate of 8 per cent. per annum and 10 per cent. of the amount due as attorney's fee in case of suit or collection by an attorney.   On the 28th day of November, 1913, the said J. I. Cook executed and delivered to J. C. Cox and the Bank of Fountain Inn a satisfaction piece wherein he acknowledged payment of $2,000 mortgage of Mrs. Kate E. Cook and authorized the register of mesne conveyance to enter satisfaction of the same upon record.   At said time Jas. I. Cook stated to J. C. Cox and R. W. Davis, cashier of the Bank of Fountain Inn, that he had the $2,000 mortgage of Kate E. Cook, and that the same was paid, and at same time delivered the imperfect satisfaction above stated dated on the 28th day of November, 1913; the same not giving the maturity of the mortgage nor the book and page.   Jas. I. Cook did not exhibit the said note or mortgage of $2,000, nor did J. C. Cox or R. W. Davis ask for the mortgage to be exhibited to them for inspection, nor did they or either of them make inquiry as to where the mortgage might be seen.   They simply relied upon the state-ment of Jas. Cook that he had the mortgage and would have it properly canceled of record by the clerk of the Court.   At that time both J. C. Cox and R. W. Davis, as cashier of the Bank of Fountain Inn, knew that there was a mortgage on record executed by Kate E. Cook to Jas. I. Cook in the sum of $2,000, and that there was of record the mortgage given by Kate E. and Jas. I. Cook in the sum of $2,500 to the Union Central Life Insurance Company.   Mrs. Kate E. Cook was not at Fountain Inn on the 28th day of November, 1913, when the $1,800 note and mortgage were drawn up

by Mr. W. R. Davis and when the first satisfaction piece was delivered by J. I. Cook.   She and her husband, J. I. Cook, were living at Hopkins, Richland county, at that time.   On the 29th day of November, 1913, J. I. Cook went to Laurens courthouse and signed a second satisfaction piece of the $2,000 mortgage before C. A. Power, clerk of the Court, which was by the said clerk of the Court entered upon the record of said mortgage in his office on December 12, 1913. On a day between the 1st and 12th of December, 1913, Jas. I. Cook and Kate E. Cook executed a mortgage over the same tract of land to secure the payment of the $1,800 note of Jas. I. Cook to J. C. Cox which was filed for record on the 12th day of December, 1913; but as the said mortgage was not probated until the day after, to wit, the 13th day of December, the mortgage must have been returned to Hopkins for probate which bears the 13th day of December, 1913. On the 12th day of December, 1913, the Bank of Fountain Inn discounted the said $1,800 note and mortgage and placed the net proceeds to the credit of Jas. I. Cook on its books.

J. C. Cox indorsed this note to the Bank of Fountain Inn, and on the 14th of November, 1915, this note is stamped paid by the said bank.

On February 9, 1915, J. I. Cook and Kate E. Cook executed to J. C. Cox a promissory note in the sum of $1,337.32, payable February 9, 1916, at the Bank of Fountain Inn, and on the same day executed a mortgage over the same tract of land to secure payment of said note, which mortgage was recorded in the office of the clerk of the Court of Common Pleas for the county of Laurens in said State on the 23d day of March, 1915, in Book 46, p. 95.

The full amount of this note and mortgage was advanced by J. C. Cox to Jas. I. Cook.

On the 24th day of March, 1915, the Union Central Life Insurance Company commenced an action in the Court of Common Pleas for the county of Laurens in said State against Kate and Jas. I. Cook and J. C. Cox, and later the

Bank of Fountain Inn by its intervention for the foreclosure of the mortgage executed by Kate E. and Jas. I. Cook to said company, and the said action ripened into judgment of foreclosure and sale of the land under the three mortgages, to wit, the $2,500 mortgage of the Union Central Life Insurance Company, the mortgage of $1,800 executed by Kate E. Cook and Jas. I. Cook dated November 28, 1913, to J. C. Cox and transferred by him to the Bank of Fountain Inn, and the mortgage executed by J. I. Cook and Kate E. Cook to J. C. Cox on February 9, 1916. On May 7, 1915, the Court granted a decree for the sale of the said premises by the sheriff on sales day in October, 1915, and granted judgment against the said Kate E. and Jas. I. Cook as follows:

The Union Central Life Insurance Company for the sum of $3,071.80, in favor of the Bank of Fountain Inn for the sum of $2,114.64, and in favor of J. C. Cox for $1,500.81. The land was advertised for sale and sold to J. C. Cox as the highest bidder for the sum of $4,500 on sales day in November, 1915. On November 3, 1915, J. C. Cox executed a mortgage on the same land to the Bank of Fountain Inn for the sum of $5,386.87, and that amount less discount was advanced by said bank to J. C. Cox, and that the said mortgage is unpaid except as to the interest.

From the proceeds of the sale the sheriff paid out the funds as follows:

To the Union Life Insurance Company, $3,175.73; Sheriff's costs, McCain, $5.70; C. A. Power, clerk, $5.55; H. S. Blackwell, referee, $6.00; J. T. Langston, auctioneer, $1.00; J. D. Owings, sheriff's commission, $50.00; L. Herald, advertising, $19.00; taxes for 1914, $24.21; taxes for 1915, $25.00; Bank of Fountain Inn, $1,183.83. Total, $4,496.02. Paid J. C. Cox, $3.98. Total amount of purchase money, $4,500.00.

The Cooks did not answer the said complaint in this last action at all.

The Union National Bank was not made a party to the above stated foreclosure proceeding. Nor did the said bank know of the said proceeding while it was pending, nor until after the sale of the land, nor until it had placed its notes and mortgages in the hands of its attorneys for collection. The Union Central Life Insurance Company commenced its action for foreclosure within four months after its mortgage became collectible by default of the payment of interest note due December 1, 1914, and when the said action was commenced the last note that the Cooks executed to J. C. Cox was not due. No blame should be attached to the attorney for the Union Central Life Insurance Company for not making Union National Bank party, for the records disclosed the alleged satisfaction of the mortgage which it held and the said attorneys did not know that the said bank held the said mortgage. However, the action was a speedy one, as the decree was rendered in less than two months after the action was commenced and the sale ordered in October before the crops upon the lands were fully gathered for the year.

It should have been stated at the beginning of this report that the defendants, J. C. Cox and the Bank of Fountain Inn, filed their answers to the complaint in the present action, denying the allegations of the complaint, and alleging that the defendant, Cox, is a *bona fide* purchaser of the premises for value without notice of the plaintiff's mortgage.

Conclusions of Law: 1. Is the plaintiff the lawful owner and holder of the $2,000 note and mortgage of Kate E. Cook dated the 20th and 26th days of March, 1913?

Tested by the general commercial law, this question is answered in the affirmative. The note is in form a negotiable one payable to order of Jas. I. Cook one year after its date and was by him indorsed over to the plaintiff, along with the delivery of the mortgage of real estate of Mrs. Kate E. Cook bearing date the 26th day of March, 1913, as collateral security to the note of James I.

Cook and Kate E. Cook in the sum of $1,500 to the Union National Bank dated the 24th day of March, 1913, but in fact delivered to said bank on the 26th day of March, 1913, and on the last named day the net proceeds of the said note were paid over to James I. Cook. The transfer of a promissory note as security for another note of the assignor makes ·the assignee a *bona fide* holder for value of the collateral security. The assignment and delivery of the note carries with it the mortgage securing the same. The note is the principal and the mortgage is the incident and follows the note in its delivery from one person to another. When a negotiable note payable to order is indorsed generally by the payee the note and its incidents pass in the commercial world by delivery. *Dearman v. Trimmier,* 26 S. C. 507, 2 S. E. 501; *Carpenter v. Longan,* 16 Wall. 271, 21 L. Ed. 313; *Bailey v. Seymour,* 42 S. C. 322, 20 S. C. 63; *Patterson v. Rabb,* 38 S. C. 138, 17 S. E. 463; 19 L. R. A. 831; *Bank v. Chambers,* 11 Rich. 657.

2. Were the two satisfactions that James I. Cook executed and had entered, one in the office of the clerk of the Court of Common Pleas for said county and State on the 28th and 29th day of November, 1913, upon the record of the $2,000 mortgage, valid and effectual to postpone the mortgage of the Union National Bank to that of the Bank of Fountain Inn and of J. C. Cox? This question is answered in the negative.

Section 1322, vol. I, Civil Code 1912, says: "It shall be the duty of the clerk, or of the register of mesne conveyances, as the case may be, in whose office any judgment or mortgage may be of record, on receipt of the fees, to permit any judgment creditor, or his or her attorney, or any mortgagee, as the case may be, to enter satisfaction thereof; or if any Judge shall order satisfaction to be entered thereof, to enter ·satisfaction accordingly."

I cannot assume that the legislature intended that a mortgagee, who had parted with the possession and title to the

mortgage, would have the authority with the mere permission of the clerk of the Court to enter satisfaction upon the record of the mortgage and thereby destroy the validity of the said mortgage when the same was in the possession of a *bona fide* holder for value. I am of the opinion that the proper construction of this section is that a mortgagee who is still the owner of the mortgage may enter satisfaction of the same in the office of the clerk of the Court or register of mesne conveyances. This section should be construed in connection with section 3461 of said volume of the Code, which reads as follows:

"Any person who shall have received full payment or satisfaction, or to whom a legal tender shall have been made, of his debts, damages, costs and charges, secured by mortgage of real estate, shall, at the request of the mortgagor, or of his legal representative, or of any other person being a creditor of the said debtor, or a purchaser under him, or having an interest in any estate bound by such mortgage, and on tender of the fees of office for entering such satisfaction, within three months after such request made, enter satisfaction in the proper office, on such mortgage, which shall forever thereafter discharge and satisfy the same."

It is to be observed that the person who is permitted and required to enter satisfaction upon the record of a mortgage is one who has received full payment or satisfaction. A person who has not received "full payment or satisfaction" of mortgage would not be authorized to enter satisfaction especially when such person did not own the mortgage, but had transferred the same to a *bona fide* holder for full value. We must assume that the legislature did not intend that a fraudulent entry of satisfaction would destroy the rights of a *bona fide* holder of the mortgage and the debt secured thereby. So I conclude that sections 1322 and 3461 of volume I of the Code only authorize and require a mortgagee to enter satisfaction of a mortgage of real estate when he is

the owner and holder of the instrument at the time and has received payment or satisfaction of the same.

There is no law in this State that requires assignments of mortgages to be recorded.

The issue is based upon this proposition that is quoted and relied upon in all the Courts, both of law and equity, that when one of two innocent persons must suffer at the hands of a wrongdoer, the one must bear the loss who put it in the power of the wrongdoer to commit the injurious act or who was guilty of negligence in regard to the matter in question. In this case, the plaintiff, Union National Bank, was guilty of no negligence, and at the time of the commission of the wrongful act by James I. Cook in entering satisfaction upon the $2,000 mortgage was in the lawful possession of the note and mortgage in question, while the same was running to maturity and was not then past due. On the other hand, both the Bank of Fountain Inn and the defendant, J. C. Cox, were negligent in not demanding of James I. Cook the possession of the mortgage thus satisfied or in making an inquiry of the mortgagor or other investigation as to the whereabouts of the mortgage or the alleged payment of the debt secured thereby. They simply relied upon James I. Cook's statement that he had possession of the mortgage and that it was paid. The defendants, Bank of Fountain Inn and J. C. Cox, had 10 days from the time of the execution of the satisfaction piece and the time when the proceeds of the $1,800 note was discounted for an investigation as to the whereabouts of the mortgage or the payment of the debt and none was made. The said defendants had actual and constructive notice that the $2,000 note and mortgage were in existence and were not then due, and yet they relied upon the uncorroborated statement of James I. Cook that they were paid and that he would procure the same to be satisfied of record. I conclude that the rights of the plaintiff, Union National Bank, are superior to the rights of the defendants as to the priority

of the mortgage of $2,000 executed by Kate E. Cook on the 26th day of March, 1913, and transferred to Union National Bank before its maturity *bona fide* for value. *Williams v. Paysinger,* 15 S. C. 171; *Singleton v. Singleton,* 60 S. C. 216, 38 S. E. 462, 1 Story, Equity Ju. 404; *Jones v. Morey,* 2 Cow. (N. Y.) 246, 14 Am. Dec. 475; *Bamberger v. Geiser,* 24 Or. 204, 33 Pac. 609; *Bank v. Live Stock Bank,* 203 U. S. 296, 27 Sup. Ct. 79, 51 L. Ed. 192; *Lynch v. Hancock,* 14 S. C. 66.

"On making payment upon a mortgage, the debtor should always require the production of the note, or bond secured by it, otherwise it may turn out that the evidence of the debt had been assigned." 1 Jones on Mort., sec. 956.

"When the plaintiffs in error found upon the records a mortgage securing a negotiable note, it was their duty to inquire whether the release was executed before or after the assignment by persons having the authority to do so." *Ins. Com. v. Huntington,* 57 Kan. 744, 48 Pac. 19; *Keohane v. Smith,* 97 Ill. 156; *Reeves v. Hays,* 95 Ind. 521; *Fischer v. Woodruff,* 25 Wash. 67, 64 Pac. 923, 87 Am. St. Rep. 742.

3. Is the plaintiff entitled to maintain its action for foreclosure of its mortgage?

I answer this question in the affirmative.

At common law, a real estate mortgage in its nature was analagous to a chattel mortgage. Upon its execution the title to the land, *eo instanti,* was transferred to the mortgagee, and the conveyance was to be void upon the performance of the condition, contained in the defeasance, by the payment of the money or the performance of some act. The defeasance was expressed either on the face of the mortgage or upon some collateral instrument attached to the mortgage. Upon default of mortgagor in the performance of the condition, the mortgagee entered possession or brought an action of ejectment for the posses-

sion of the land.    The mortgagee also had the right to bring
an action or suit in equity for a strict foreclosure which cut
off right of redemption by the mortgagor after the expira-
tion of some fixed time thereafter usually six months or by
a common foreclosure by sale of the mortgaged premises for
the payment of the debt or performance of the required act.
It was permissible for the mortgagor to execute upon the
same land any number of successive mortgages which usu-
ally stood in priority according to their respective dates.    A
junior mortgagee had the right to bring a suit for the
redemption of the premises from a senior mortgagee, and
by so doing could tack his junior mortgage to a senior mort-
gage and cut out an intervening mortgage.    The object of a
redemption of the premises by a junior mortgagee from a
senior mortgage was to be subrogated to the title of the
senior mortgagee, and then bring suit in equity for a strict or
common foreclosure of the mortgages and cut off the equity
of redemption by the mortgagor.    The Court of chancery
assumed jurisdiction on the part of the unfortunate mortga-
gor to prevent the mortgagee from working forfeitures on
the mortgagor and acquiring a perfect title to the land at a
price less than the actual value of the land.    The doctrine
was established that once a mortgage always a mortgage,
and that the mortgagor, at any reasonable time after default
under the terms of a mortgage and before a foreclosure had
been decreed, could bring suit in equity to redeem the land
from the mortgagee and compel a reconveyance to the mort-
gagor of the land, and require the mortgagee while in pos-
session to account for rents and profits of the land.    Of
course, the mortgagor would have to pay the debt, interest,
costs, and also any oustanding debt that he might owe the
mortgagee.    The value of the land subject to a mortgage
was called the "equity of redemption."

When our State was colonized by the English people in
the early settlement of this country, they brought with them
the common law of England, and, when the colonists of this

State became an independent State in 1776, the English common law that was suitable to the condition of the colônists became a part of their local law and has been of force in this State ever since, except where it has been repealed or modified by statute. In 1721, the legislature of this State created the Court of equity and established the system of pleading and practice and the principles of equity jurisprudence as they existed in the Court of chancery of the mother country. In February, 1791, the legislature enacted a statute that changes the common law status of a real estate mortgage and declared that a mortgage was only a lien upon the land for the payment of the debt even after default and that the mortgagor held the legal title subject to the lien of the mortgage. Ever since the phrase, "equity of redemption," has been a misnomer. Until a foreclosure and sale of the mortgage premises, the legal title abides in the mortgagor, or his heirs and assigns, subject, of course, to the liens of the mortgages according to their priority. In this case the Union National Bank was not made a party to the action of foreclosure commenced and carried to a final termination by the Union Central Life Insurance Company. It is academic to assert that the Union National Bank is not bound by the decree to its prejudice which was rendered in said action on May 7, 1915. There are some things that were firmly adjudicated in that action as between the parties before the Court, but the rights of the Union National Bank are not destroyed or injured by the adjudication. The lien of its mortgage and the status of its mortgage upon the property remains unaffected by the foreclosure and sale of the land in that action. The Court had the power to transfer the title of the land from Mrs. Kate E. Cook to the purchaser, J. C. Cox, and to adjudge the amount due by Kate E. Cook to the Union Central Life Insurance Company and the amount due by James I. Cook and Kate E. Cook to the Bank of Fountain Inn and to J. C. Cox. All these findings would not only be binding upon the parties before the Court,

8—110.

but would also be binding upon the Union National Bank, except so far as fraud or mistake might occur in the findings. I find nothing of that kind in the decree or proceedings. But the said findings, so far as they purport to change the priority of the liens of the parties or the status of the rights of the Union National Bank, are null and void. The status of the liens remain as they were before the action commenced so far as the plaintiff is concerned in this action.

In order to have a complete determination of the rights of all persons concerned, all such persons are necessary parties to the action. When all parties concerned are not before the Court, some things may be adjudicated, and properly so; but there cannot be a complete adjudication of all the rights of all the persons concerned.

In *Adger & Co. v. Pringle,* 11 S. C. 545, quoted in *Douthit v. Hipp,* 23 S. C. 207, Chief Justice McIver said:

" 'There can be no doubt that all prior as well as subsequent incumbrancers, while not necessary, are proper parties to an action for the foreclosure of a mortgage of real estate, and in order that the land may produce its full value at the sale sought by such action, for foreclosure, it is desirable that such incumbrancers should be made parties.' And Mr. Pomeroy, in his Remedies and Remedial Rights, section 342, says: 'It is a rule universally established that all subsequent incumbrancers, who are holders of general or specific liens on the land, whether mortgagees, judgment creditors, or whatever be the nature of the lien, if it can be enforced against the land, are not necessary parties, in the sense that their presence is indispensable to the rendition of a decree of sale, but they are necessary parties defendants to the recovery of a judgment which shall give the purchaser a title free from their liens and incumbrances. If they are not joined as defendants, their rights are unaffected, their liens remain undisturbed and continue upon the land while in the hands of the purchaser, and they retain the right of

redemption from the holder of the mortgage before the sale, and from the purchase after the sale.' "

Some of the decisions of the American Courts hold that, before a junior incumbrancer can bring suit for the enforcement of his lien either as against a prior incumbrancer or as against a purchaser under a foreclosure to which the junior incumbrancer was not a party, it would be necessary for the junior incumbrancer to allege and prove a tender of the amount of the prior lien or the amount paid by the purchaser for his title; but I cannot follow this line of decisions, and prefer to follow the decisions sustaining the opposite view that the junior incumbrancer can bring an action of general foreclosure either before or after the sale in an action to which he was not a party without alleging or proving a tender of the amount of the prior liens upon the land.   It is an academic principle no one is bound by a proceeding to which he was not a party except so much of the adjudication as is binding upon those in privity with the parties to the action.   The quotation above given from Pomeroy on Remedial Rights is construed to mean that the junior incumbrancers would have the right of general foreclosure either against the prior incumbrancer or the purchaser, each one having his rights protected according to their rank and priority.   But it should appear to the Court that the junior incumbrancer has a substantial right in the land to be protected and his lien enforced for some practical purpose, and not merely the prosecution of a fictitious cause of action.   In other words, it must appear to the Court *prima facie* that the land is worth more than prior incumbrances and that in probability upon a resale of the land the proceeds would reach the claim of the junior incumbrancer.

In this case, it is clear and convincing that when the land was sold on sales day in November, 1915, it brought the sum of $1,183.83 more than the amount of taxes, costs, and the amount of the mortgage of the Union Central Life

Insurance Company. It is a fair presumption that it will bring as much at a resale of the land this fall. *Jones v. Williams,* 36 L. R. A. (N. S.) 435, note 11.

Upon the question of redemption, it is clear that defendant, J. C. Cox, has the right to redeem the land from the lien of the mortgage of the Union National Bank and from the lien of the mortgage of the Bank of Fountain Inn.

The defendant, J. C. Cox, having been in possession of the land since sales day in November, 1915, he must account for the rents and profits of the land less taxes paid. There was no testimony as to the amount of the rents and profits. The mortgagee in possession is a trustee for the mortgagor, and the burden is upon him to show to the Court the amount of the rents and profits. In the absence of testimony it may be assumed that the rents and profits of land less taxes will be equal to the interest on the amount of the mortgage debt of the Union Central Life Insurance Company and the costs of the action in which it was foreclosed.

Primarily, J. C. Cox is subrogated to the rights of the Union Central Life Insurance Company for the amount paid by him on its mortgage including costs of that action, to wit, the sum of $3,312.19. *Hunter v. Hunter,* 63 S. C. 93, 41 S. E. 33, 90 Am. St. Rep. 663.

Likewise the Bank of Fountain Inn by estoppel of J. C. Cox and by virtue of his mortgage to said bank is entitled to the amount due J. C. Cox under the mortgage of the Union Central Life Insurance Company. On November 3, 1915, J. C. Cox executed to the Bank of Fountain Inn a mortgage of the premises to secure a note to said bank of $5,386.87. The interest on said note has been paid, but it is uncertain as to what time. There is due the Bank of Fountain Inn the amount due on said note and mortgage, $5,386.87; ten per cent. attorney's fee, $538.68. Total with interest from proper date, $5,925.55.

The $1,800 note and mortgage and the $1,337.32 note and mortgage of Kate and James I. Cook have been paid and marked satisfied, or should be so considered.

The rank and amounts of the different liens are as follows: Bank of Fountain Inn, by subrogation assignment under the mortgage of Central Life Insurance Company, $3, 312.19; Union National Bank, $1,963.50; Bank of Fountain Inn, $2,613.36.

I, therefore, recommend that the premises be sold by the clerk of this Court on sales day in November, 1917, or on some subsequent sales day after legal advertisement, one-half of the purchase money cash and the balance with interest from the day of sale at the rate of 8 per cent. per annum secured by bond and mortgage of the premises, and that from the proceeds of sale the said clerk do pay the costs and expenses of this action and the costs of said sale and any taxes then due upon the said premises, and then pay to the Bank of Fountain Inn the sum of $3,312.19, then pay to the Union National Bank the sum of $1,963.50 with interest thereon from the 1st day of April, 1917, then pay to the Bank of Fountain Inn the sum of $2,613.36, and the balance, if any, he shall pay to the defendant, J. C. Cox.

The defendant, J. C. Cox, at any time before the sale herein recommended should have the right to redeem the said land from said liens and stop the sale of the said land by paying the costs and expenses of this action, and the amounts due the Union National Bank, the plaintiff, and the amounts due the Bank of Fountain Inn on their mortgage.

I recommend that the plaintiff, Union National Bank, have judgment against Kate E. and James I. Cook for the sum of $1,963.50, and for the costs of this action.

*Messrs. Simpson, Cooper & Babb,* for appellants, cite: *As to appellants being innocent purchasers for value, without notice of claim of respondent:* 81 A. S. R. 588 (N.

Dakota) ; 14 Iowa 544; 83 Am. Decisions 380; 63 A. S. R. 460 (Iowa) ; 28 A. S. R. (Neb.) ; 24 Law Ed. U: S. 706; 27 Cyc. 1431, 1429; 12 A. S. Rep. 175 (Iowa) ; Washburn on Real Property, vol. XI, 190; Pomenory's Eq. Jurisp., vol. II, sec. 191; 5 S. C. 342; 14 S. C. 66; 15 S. C. 171; 2 Jones on Mortgages 959; 22 S. C. 339, 346, 356, 351; Code 1912, vol. I, sec. 1322; 81 A. S. R. 593; 87 N. Y. 446; 57 A. S. R. 509; 107 U. S. 480; 27 Law Ed. 529. *Plaintiff has no right to foreclose its mortgage, but at best has only a right to redeem:* 27 Cyc. 1812e, 1814-14-1826-5. *Plaintiff was negligent in failing to have its assignment recorded, and the parties should be left where. the Court finds them. Between equal equities the law will prevail:* 16 Cyc. 138.

*Messrs. Barron, McKay, Moffatt & Frierson,* and *Messrs. Blackwell & Sullivan,* for respondent, submit : *That the person, who is permitted and required to enter. satisfaction upon the record of a mortgage, is one who has received full payment or satisfaction:* Vol. I, Civil Code of 1912, sections 1323 and 3461. *Title to property cannot be taken away by theft or fraud:* 28 S. E. —; 100 Ga. 236. *Plaintiff is the lawful owner and holder of the note and mortgage of Kate E. Cook:* 26 S. C. 507; 20 S. E. 63; 38 S. C. 138; 11 Rich. 567. *It was not negligence for plaintiff to fail to record its assignment:* 60 S. C. 216; 38 S. E. 462; 15 S. C. 171; 2 Cow. 246; 14 Am. Dec. 475; 24 Oregon 204; 33 Pac. 604; 89 Mo. 553; 15 W. 142; 47 Neb. 616; 66 N. W. 622; 135 Tenn. 249; 182 S. W. 326; 139 N. W. 693; 205 N. Y. 105; 119 N. W. 931; 138 Wis. 82; 84 N. E. 928; 234 Ill. 336; 13 Okla. 719; 76 Pac. 130; 51 Led. 192; 27 Sup. Ct. Rep. 79. *The satisfaction of a mortgage upon the record by a mortgagee, after he has assigned it, does not operate to cancel the mortgage as against a subsequent incumbrancer in good faith, and for value, if the assignee is not required to record his assignment:* 87 Am. St. Reports 742; 25 Wash. 67; 64 Pac. 932; 10 Wash. 151;

38 Pac. 746. *Plaintiff could not be accused of negligence for not recording its assignment:* 57 Kan. 744; 48 Pac. 19; 25 Kan. 625; 37 Am. Rep. 274. *Were the defendants equally free from negligence?* 57 Kan. 744; 97 Ill. 156; 12 Col. App. —; 54 Pac. 404; 95 Ind. 521; 15 S. C. 171. *Plaintiff is entitled to maintain its action for foreclosure of its mortgage:* 26 Rich. 401; 37 S. C. 503; 11 Rich. 704; 12 S. C. 61; 3 Oregon 129; 24 Ohio State Reports, p. 24; 28 N. J. Equity 361; 47 Barb., p. 91.

June 25, 1918.

The opinion of the Court was delivered by Mr. Justice Watts.

For the reasons assigned by F. P. McGowan, Esq., special referee, which report was confirmed by the Circuit Court, it is the judgment of this Court that the judgment of the Circuit Court be affirmed.

Affirmed.