BALLOU v. YOUNG.[1]

1. DEED—MISREPRESENTATION—CASE CRITICISED.—Where a woman, illiterate and almost blind, and without negligence on her part, signs a deed of conveyance which is different from what it was represented to her to be, the fraudulent vendee and those claiming under him acquire no title by such deed. Montgomery *v.* Scott, 9 S. C., 20, and 10 *Id.*, 449, approved.

2. NEGOTIABLE NOTE—MORTGAGE.—Where a party, having the power to do so, executes a promissory note and a mortgage to secure it, an endorsement and transfer of the note operates as an assignment of the mortgage, and if the endorsement was for valuable consideration before due, such mortgage is governed by the rules of commercial law applicable to negotiable instruments.

3. IBID.—IBID.—POWER TO EXECUTE MORTGAGE.—But power given to a trustee, if necessary in his discretion, to mortgage the land held by him in trust for certain purposes, does not include the power to make a negotiable promissory note for a debt which he executes a mortgage on this land to secure; and, therefore, if the trustee makes such note and mortgage in breach of his trust, so known to be by the payee, an endorsee for value before due of this note and assignee of the mortgage takes the mortgage subject to its invalidity in the hands of his assignor.

Before HUDSON, J., Richland, October, 1893.

Action by William H. Ballou against Anna Young, W. A.

---

[1] This case and the nine next following, that is to say, to *State* v. *Moorehead*, inclusive, were submitted on printed briefs and arguments before Mr. Justice Gary's term commenced, but being undecided when such term commenced, and there having been no oral arguments, it was assigned to him to write the opinions in these ten submitted cases.—REPORTER.

Shelton, and others, commenced October 10, 1892. So much of the judge's charge as related to the execution of the deed under misrepresentation of its contents, was as follows:

The Court: Mr. Crawford, please read your requests to charge.

Mr. Crawford read them, as follows: "In the case at bar, if the jury believe, from the preponderance of the evidence, that Edward M. Babbitt and W. S. Monteith conspired to defraud the defendants, or any of them, and the note and mortgage assigned to the plaintiff by Mr. Monteith formed any part of that fraud and conspiracy, then the plaintiff, Ballou, as the assignee of Mr. Monteith, purchased the same tainted with any fraud, known and participated in by said Monteith, and said Ballou took only such interest as said Monteith had, and is bound by all the equities binding on said Monteith, provided Anna Young did not sign the deed, if such was executed, in a negligent manner."

4th. "That if the jury believe, from the preponderance of the evidence, that Monteith lent himself and his professional knowledge to Edward M. Babbitt, in perpetrating a fraud upon the defendants, that then the plaintiff cannot recover in this case, if that fact is proved by the preponderance of the evidence, and the jury conclude that Babbitt and Monteith combined and confederated together for the purpose of defrauding defendants, provided Anna Young was guilty of no negligence in signing the trust deed."

5th. "That fraud can be inferred from circumstances, and that if the circumstances in this case are such as to satisfy the jury, by the clear preponderance of the evidence, that a fraud has been practiced by Babbitt and Monteith, or by either of them, on the defendants, or any of them, their verdict must be for the defendants, or for those of them affected by the said fraud, provided Anna Young was guilty of no negligence."

The Court: Gentlemen of the jury, that will constitute part of my charge to you. Those propositions are correct. * * * Now the defence Anna sets up here is, that she did not sign that trust deed of '89—I must qualify that she didn't sign what she supposed was a trust deed, that she signed a paper. This trust. deed appears to have been witnessed by Mr. Monteith

and one Mr. White. She says there was no such man as
White there, nobody but Monteith and Babbitt, and that she
was told that it was a paper making him a guardian of her de-
ceased sister's children; that she requested them to read it to
her, that she was then practically blind—at least, her eyes were
in such a condition she couldn't see to read, barely could see
to write her name; that she requested the paper to be read,
and it was explained to her as a paper making Babbitt guardian
of her sister's children, and she had no idea that it was con-
veying the land to Babbitt; didn't know it was making him
trustee, with power to sell this land or to mortgage it. Well,
if you believe from the preponderance of evidence in this case
that White didn't see that deed executed, or that there was
but one witness there, W. S. Monteith, that would be an end
to the plaintiff's case, because the title would be incomplete;
there might be equity on the part of Ballou, but his legal title
would be incomplete, that would vitiate the deed. It is the
duty of every person before signing a paper to know what they
are doing; they must exercise proper care and proper diligence,
must be informed—because these papers get in circulation.
Now the question as to whether proper care and diligence were
used, is largely a question of fact. All the court could do would
be to define the word diligence, tell you what diligence is, and
then whether it was exercised in this case, and whether the
party really knew what she was signing—whether she was ig-
norant of it, and if ignorant, whether she was imposed upon,
deceived, and defrauded, without fault on her part; these are
questions of fact for the jury. I could only tell you it was her
duty to know what she was signing. Suppose you come to the
conclusion that she was practically blind; there is testimony as
to her color, her origin, &c., you take that into consideration,
and you take into consideration the relation existing between
her and Babbitt; you take all these matters into consideration,
and the question of fact whether she was really practically blind
or not—and if she couldn't read that paper, and it was read to
her wrong by a person in whom she had confidence, and the
person deliberately misread the paper, intending to deceive
and defraud her, she wouldn't be bound by it. In other words,

you are to say whether the testimony in this case, by its preponderance, shows that on that occasion this woman, Anna Young, without fault on her part, and exercising ordinary care and diligence to get the proper information as to what she was doing, was deliberately deceived and defrauded by this man Babbitt. If he took advantage of that condition, I say, if he read the paper and explained it to her wrong—for instance, telling her it was appointing him guardian of the children, instead of informing her what the paper was, reading it correctly; if she was actually deceived and defrauded without fault on her part (and that's a question of fact for you), then the deed cannot stand as against her or anybody claiming under it, because fraud vitiates the transaction, and no benefit can be derived from it subsequent thereto—just as if the deed had no existence in fact. If the defendant, Anna Young, knew what she was doing, if there was no effort to deceive her, if Monteith and Babbitt explained it all to her, and if it was read correctly, and there was no effort to deceive her, and she was not deceived, knew what she was doing when she signed the paper, it is a valid deed, and any one claiming under it would have a good title against her; you are to determine that fact—there is where one of the leading questions arises. Now, suppose you come to the conclusion it is an invalid deed, why, as a matter of course, you cannot give a verdict for the plaintiff. Suppose you come to the conclusion that she knew what was being done; suppose you come to the conclusion she ought to have known, and is bound by it, and that the deed ought to stand, then the next question arises about this mortgage.

* * * I have endeavored to impress upon you the law, in regard to the good faith of these different transactions, and leave the question of fact altogether for you. I cannot encroach upon your privileges in that respect. You are judges of the facts, and you will take into consideration all the facts and circumstances in regard to the whole matter, in arriving at your conclusion. If the transaction of this trust deed is free from fraudulent conduct of Mr. Babbitt, if Anna Young signed that trust deed knowing what she was doing, or if she ought to have known it, then the trust deed is good. * * * If the trust deed

was founded in a fraud upon the woman, it is no account, and there is no title; if the trust deed is good, and the mortgage is founded in fraud, Monteith knowing of it, then the mortgage is bad, and no title passed by it; but if the mortgage transaction is free from fraud, so far as Monteith's knowledge of it is concerned, then it is good.

*Mr. R. W. Shand,* for appellant.

*Mr. Andrew Crawford,* contra.

September 12, 1894. The opinion of the court was delivered by

MR. JUSTICE GARY. This was an action for the recovery of a lot of land in the city of Columbia, called lot No. 1, and of a half interest of an adjoining lot called lot No. 2. Both parties claimed from a common source, and plaintiff's title, on the face of the papers, seemed perfect. The defence was fraud in two links of plaintiff's title. The verdict was for the defendants. One Maria Young purchased lot No. 2 on July 17th, 1880. Prior to that date, Josephine Young, the daughter of Maria, had purchased lot No. 1. Josephine died in 1878 or 1879, leaving four illegitimate children, the four Shelton defendants to this action. Josephine died intestate, leaving as her lawful heirs, her mother, the said Maria, and her sister, the defendant, Anna Young. Thereupon, the fee in lot No. 1 vested in Maria and Anna; and then Anna had a half interest in lot No 1, and Maria had the other half, and the entire interest in lot No. 2. Maria Young died intestate in 1887, 1888 or 1889. Thereupon, Anna Young became seized in fee of both lots. On 17th September, 1889, Anna Young signed a deed which purported to convey to E. M. Babbitt, the interest which the children of Josephine would have inherited, if they had not been illegitimate, to wit: all of lot No. 1, and a half interest in lot No. 2, in trust for these four children, with power to sell, "and, also, with power, if necessary, in his discretion, to mortgage the same, to enable him to best promote the welfare of said children." The defendant, Anna Young, claims that whatever paper she signed, was under representations of Babbitt that it was different from said deed. Babbitt

made a mortgage of this property, under this power, to W. S. Monteith, on 27th December, 1890, with power of sale, to secure a promissory note payable one year thereafter, and on the same day Monteith assigned the mortgage, and endorsed the note to plaintiff. After default, plaintiff sold, purchased and took deed, demand was made for possession, and action brought.

Among other things, the presiding judge charged the jury that the said note and mortgage would not be valid in the hands of Ballou, if Monteith knew that Babbitt did not borrow this money for the welfare of the four children of Josephine, even if Ballou did not know such fact. Plaintiff's attorney, in his argument, says: "Plaintiff's grounds of appeal make substantially two allegations of error in the charge: 1. In the law applicable to Anna Young's signature to this trust deed under the testimony. 2. In the law governing the holder of a promissory note and its security, which have been signed by a trustee, and put into circulation with intent to misapply the proceeds."

The charge of the presiding judge is very full, as to the rules governing in cases where a person signs a deed under fraudulent misrepresentations, and while there are parts of this charge which considered in detail would be erroneous, yet when, as it must be, it is considered as a whole, no such error can be imputed to it. The question of negligence on the part of the defendant in the alleged signing of the deed was kept before the jury throughout the charge. The law as charged by the presiding judge is in harmony with the doctrine announced in *Montgomery* v. *Scott*, 9 S. C., 20; and 10 *Id.*, 449, which is one of the leading cases on this subject.

We come now to a consideration of the exceptions complaining of error on the part of the presiding judge under the second head. The words in the deed of trust conferring power on Babbitt to execute the note and mortgage are as follows: "With power to said trustee, at any time in his discretion, to sell the whole or any part of said real estate, and reinvest the same in such manner as he deems best, and, also, with power, if necessary, in his discretion, to mortgage the same, to enable him to best promote the welfare of said children."

The note and mortgage are both signed by Babbitt as trustee, and in the mortgage he uses the words: "I, Edward M. Babbitt, as trustee for the children of Josephine Young, deceased." This was notice to Ballou of the trust and of the power under which the note and mortgage were executed. In fact, this is not questioned. Appellant's attorney in his argument saying: "There is no doubt that both note and mortgage carried notice to Ballou that Babbitt was trustee, and notice of the terms of the trust deed; but they did not carry notice of any breach of trust."

Appellant contends that if Ballou became the endorsee of the promissory note, and at the same time assignee of the mortgage, before the maturity of the said note for valuable consideration, and without notice of any facts that would have defeated a recovery thereon in the hands of Monteith, he took the note and mortgage freed from such defences, and from all equities. This would be the case, provided Babbitt had the power to execute both the note and the mortgage. There is no doubt of "the flexibility of a mortgage, and that it may be adapted to the fate of the note it is intended to secure," as was said by Mr. Justice Pope in *Patterson* v. *Rabb*, 38 S. C., 152. Section 133 of the Code provides that: "In the case of an assignment of a thing in action, the action by the assignee shall be without prejudice to any set-off, or other defence existing at the time of, or before notice of, the assignment; but this section shall not apply to a negotiable promissory note or bill of exchange, transferred in good faith, and upon good consideration, before due." The transfer of a note carries with it a mortgage given to secure payment of such note. *Walker & Trenholm* v. *Kee*, 14 S. C., 143; *Cleveland* v. *Cohrs*, 10 *Id.*, 225. Section 133 not only does not apply to a negotiable promissory note transferred in good faith, and upon good consideration before due, but does not apply to a mortgage given to secure payment of such note. Under such circumstances, the rule of the commercial law applicable to negotiable promissory notes is likewise applicable to the mortgage given to secure payment of the same. See *Patterson* v. *Rabb*, 38 S. C., *supra*, and cases therein referred to.

Did Babbitt have the power under the deed of trust to exe-cute both the note and mortgage? We think not. The power conferred upon him was simply to *mortgage*, and under it Babbitt had no more authority for executing a sealed note, or bond, than to give a promissory note. A note and mortgage are both securities for the payment of the debt; they are separate and distinct; nor is a note essential to the validity of a mortgage. In the case of *Plyler* v. *Elliott*, 19 S. C., 257, a note and mortgage were given to secure payment of the same debt; the note was altered in such a manner as to prevent a recovery thereon. The court, however, held that this did not prevent a foreclosure of the mortgage, saying: "But consider-ing the note as not recoverable either against the principal debtor or his surety on it, the more difficult question still re-mains, whether the plaintiff can enforce the mortgage, which was not altered, against the principal debtor, for the balance of his debt, as a separate security unaffected by the alleged alter-ation of the note. This court has recently held, in the case of *Nichols* v. *Briggs*, 18 S. C., 484, that when a note and mortgage are both given to secure the same debt, the mortgage may be enforced, although the note was barred by the statute of limit-ations. That case went on the ground that the debt itself is something different from either the note or mortgage, which are both mere securities for, and evidences of, the debt, and as a consequence the loss of the right to enforce one does not neces-sarily take away the right to enforce the other. The courts say: 'It must be kept in mind that there is a difference between the debt itself and the securities for it. The debt is one, but there may be a number of securities of different kinds, personal, real, pledge, mortgage, &c. The note given is only evidence of the debt, and one of the means of collecting it, and if there is a mortgage, that is only another security for the same debt.'" In the case of *Nichols* v. *Briggs*, 18 S. C., 484, the court says: "The mortgage would have been good as a security for the $500, even if the bond had never been given."

Jones on Mort., section 353 (quoted with approval in *Mc-Caughrin & Co.* v. *Williams*, 15 S. C., 516), says: "The mortgage debt exists independently of the note. The inquiry is: Does

the debt exist? If it does, it is not essential that there should be any evidence of it, beyond what is furnished by the recital of the deed. The validity of the mortgage does not depend upon the description of the debt contained in the deed, nor upon the form of the indebtedness, whether it be by note or bond or otherwise; it depends rather upon the existence of the debt it is given to secure. Although there be no note or bond, and no time is specified for the payment of the mortgaged debt, the mortgage, if given to secure the payment of the debt that actually exists, is valid." See, also, *Dearman* v. *Trimmier*, 26 S. C., 506.

In the light of the foregoing authorities, the only security which Babbitt had the right to execute was the mortgage, but not the promissory note.

It is the judgment of this court, that the judgment of the court below be affirmed.