In re Frances G. **BRYANT,** Debtor.

Frances G. **Bryant, Plaintiff**

v.

**HSBC Mortgage Services, Inc., Defendant.**

**Bankruptcy No. 10–10959. Adversary No. 10–01091.**

United States Bankruptcy Court, S.D. Georgia, Augusta Division.

July 11, 2011.

Lee Ringler, Augusta, GA, for Plaintiff.

Barbara B. Liu, Sicay–Perrow, Knighten & Bohan, PC, Mark L. Wilhelmi, Mark L. Wilhelmi, PC, Augusta, GA, for Defendant.

### ORDER

SUSAN D. BARRETT, Chief Judge.

The matters before me are: Frances G. Bryant's ("Bryant" or "Debtor") complaint against HSBC Mortgage Services, Inc. ("HSBC") to determine HSBC's standing and secured status and requesting declaratory judgment, injunctive and equitable relief, including actual and punitive damages; her request to determine the validity, priority or extent of HSBC's purported lien; and HSBC's motion for relief from the automatic stay. These are core proceedings under 28 U.S.C. § 157(b)(2)(G) and (K), and jurisdiction is proper pursuant to 28 U.S.C. § 1334.

### FINDINGS OF FACT

Debtor's bankruptcy schedules list HSBC's mortgage debt as disputed in the amount of $98,341.00. *See* Chap. 13 Case No. 10–10959, Dckt. No. 1, Sch. D. Debtor's pleadings dispute the amount owed and challenge whether HSBC has standing to pursue a claim and whether HSBC actually holds a valid and enforceable secured claim against property of Debtor's bankruptcy estate, namely the property at 368 Carriage Lane, North Augusta, South Carolina ("Carriage Lane"). While Debtor did not appear at the hearing, it is undisputed that Debtor does not reside at the Carriage Lane property.

Conversely, HSBC moved for relief from the automatic stay. HSBC asserts it has a valid secured claim and argues the property is not necessary for Debtor's reorganization. HSBC further contends there is no equity in the property and Debtor is significantly delinquent in her pre- and post-petition payments to HSBC. Debtor concedes there is no equity in the property.

The underlying debt is evidenced by the promissory note and mortgage. Def.'s Ex. Nos. 1 and 2. The initial lender was Choice Capital Funding, Inc. ("Choice"). Debtor acknowledges that this is the only mortgage of record on the property. Counsel for HSBC filed a proof of claim asserting a secured claim of $108,292.32. Def.'s Ex. No. 9. Debtor complains the proof of claim fails to include documentation supporting the $17,027.77 charge for pre-petition arrearage and assessed fees and costs. Debtor further complains that the proof of claim does not include any evidence of a transfer and delivery of the note and mortgage from Choice to HSBC. The promissory note attached to the proof of claim discloses that it was indorsed in blank by the purported president of Choice, but the indorsement is not dated. HSBC provided

the original note and mortgage at the hearing and offered them into evidence. Def.'s Ex. Nos. 1 and 2.[1]

Dana St. Claire–Hougham, a conflict resolution analyst with HSBC, testified this indorsement was done in connection with the terms of the 2005 Bulk Continuing Loan Purchase and the Flow Loan Purchase agreements entered between Household Financial Services, Inc. and Choice in March 2000. Def.'s Ex. Nos. 3 and 4. In 2003, Household Financial Services, Inc. filed a name change certification with the Georgia Secretary of State reflecting it changed its name to HSBC, the named defendant in this proceeding. Def.'s Ex. No. 8.

Ms. St. Claire–Hougham further testified that HSBC purchased this loan from Choice in January 2005, producing two internal reports reflecting the transfer. Def.'s Ex. Nos. 5 and 7. Ms. St. Claire–Hougham testified that HSBC received the original indorsed promissory note and mortgage contemporaneously with this 2005 transaction.[2]

In July 2007, Choice filed a chapter 7 bankruptcy petition in the Northern District of Georgia. Chap. 7 Case No. 07–70717–JEM (Bankr.N.D.Ga. July 5, 2007). Debtor filed for chapter 13 bankruptcy relief in April 2010. Thereafter, in May 2010, two assignments of the mortgage and note were executed and filed in the Aiken County, South Carolina real estate records by Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Choice assigning and transferring to HSBC all beneficial interest of MERS in the mortgage and the promissory note. Debtor's Ex. No. 3 and Def.'s Ex. No. 6.[3]

Ms. St. Claire–Hougham also testified as to the payment history on the loan. Def.'s Ex. No. 12. HSBC filed a proof of claim in the amount of $108,292.32. Def.'s Ex. No. 9. She testified there was a pre-petition arrearage of $17,027.77, and as of the hearing date, Debtor had made only one post-petition payment, resulting in Debtor being delinquent in at least seven post-payments as of the hearing date. In addition, as of the petition date, Debtor was delinquent in at least nine pre-petition payments. Furthermore, HSBC has advanced funds for the ad valorem taxes and insurance as a result of Debtor's failure to timely pay these sums. Ms. St. Claire–Hougham also testified that HSBC's proof of claim actually omitted a claim of $5,965.00 for deferred interest. According to Ms. St. Claire–Hougham, the payoff as of the hearing date exceeded $120,000.00.

## CONCLUSIONS OF LAW

■ At the conclusion of the evidence, I orally ruled in HSBC's favor and lifted the stay. After the hearing and before a written order was entered, Debtor filed two motions for reconsideration citing two recent cases from Massachusetts and New York, respectively, as grounds for reconsideration, *U.S. Bank Nat'l. Ass'n v. Ibanez*, 458 Mass. 637, 941 N.E.2d 40 (2011) and *In re Agard*, 444 B.R. 231 (Bankr. E.D.N.Y.2011). Debtor argues these cases negate the holding that the "mortgage fol-

---

1. It was agreed that HSBC could retain the originals with true and correct copies being tendered into evidence.

2. At one point on cross examination, Ms. St. Claire–Hougham testified that HSBC did not obtain the original loan documents until the assignment of the mortgage in 2010, but her subsequent testimony consistently and repeatedly indicated the original loan documents were obtained contemporaneously with the 2005 transaction, and I found her testimony on this point to be credible.

3. It is unclear why two assignments from MERS as nominee for Choice to HSBC were executed and recorded.

lows the note." After considering these cases, and Debtor's arguments, I deny Debtor's motion to alter my previous ruling.

■■■ First, these cases involve the respective laws of Massachusetts and New York, not South Carolina which is the applicable law[4] in the case *sub judice*. Interpreting the law of Massachusetts, the court in *Ibanez* noted:

> In Massachusetts, where a note has been assigned but there is no written assignment of the mortgage underlying the note, the assignment of the note does not carry with it the assignment of the mortgage. [ ] Rather the holder of the mortgage holds the mortgage in trust for the purchaser of the note, who has an equitable right to obtain an assignment of the mortgage, which may be accomplished by filing an action in court and obtaining an equitable order of assignment. ("In some jurisdictions it is held that the mere transfer of the debt, without any assignment or even mention of the mortgage, carries the mortgage with it, so as to enable the assignee to assert his title in an action at law.... This doctrine has not prevailed in Massachusetts, and the tendency of the decisions here has been, that in such cases the mortgagee would hold the legal title in trust for the purchaser of the debt, and that the latter might obtain a conveyance by a bill in equity"). *See Young v. Miller*, 72 Mass. 152, 6 Gray 152, 154 (1856).

*Ibanez* at 54. This is contrary to the law of South Carolina. In South Carolina, a mortgage travels with the promissory note even without a written assignment.

[South Carolina] law does not require both possession of the note and a written assignment of the mortgage to prove ownership.... When a negotiable note payable to order is indorsed generally by the payee the note and its incidents pass in the commercial world by delivery.... There is no law in [South Carolina] that requires assignments of mortgages to be recorded.

*In re Woodberry*, 383 B.R. 373, 376–77 (Bankr.D.S.C.2008), *citing Union Nat'l Bank v. Cook*, 110 S.C. 99, 96 S.E. 484 (1918) (internal citations omitted). "South Carolina recognizes the 'familiar and uncontroverted proposition' that 'the assignment of a note secured by a mortgage carries with it an assignment of the mortgage.'" *Midfirst Bank, SSB v. C.W. Haynes & Co., Inc.*, 893 F.Supp. 1304, 1318 (D.S.C.1994), *citing Hahn v. Smith*, 157 S.C. 157, 154 S.E. 112 (1930); *Ballou v. Young*, 42 S.C. 170, 20 S.E. 84 (1894). "'The assignment of a mortgage as distinct from the debt it secures is nugatory and confers no rights upon the transferee....'" *Id. citing South Carolina Nat'l Bank v. Halter*, 293 S.C. 121, 359 S.E.2d 74, 77 (1987) (*citing Hahn*, 157 S.C. 157, 154 S.E. 112 (1930)). The indorsement of the promissory note in blank converts the note at issue to a bearer instrument. S.C.Code Ann. § 36–3–204(c) ("For the purpose of determining whether the transferee of an instrument is a holder, an indorsement that transfers a security interest in the instrument is effective as an unqualified indorsement of the instrument"); S.C.Code Ann. § 36–3–205 ("If an indorsement is made by the holder of an instrument and it is not a special indorse-

---

4. Paragraph 16 of the mortgage states that the applicable law is the "law of the jurisdiction in which the Property is located." Def.'s Ex. No. 1. The property is located in South Carolina. *See also Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) (stating that property rights in the assets of the bankruptcy estate are determined under state law).

ment, it is a 'blank indorsement'. When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone . . . ."). "As such, ownership passes with delivery of the [note] and proof of ownership can be made by possession. No written assignment of the mortgage is required under [South Carolina] law." *In re Woodberry,* 383 B.R. at 377.

> Because the note establishes the terms of the debt and the mortgage secures the debt with the mortgaged property, the assignment of the mortgage is generally done in conjunction with the assignment of the note. The transfer of a note operates as an assignment of the mortgage given to secure it, in the absence of any provision to the contrary. The assignment and delivery of the note carry with it the mortgage securing the underlying debt. The note is the principal and the mortgage is the incident and follows the note in its delivery from one person to another.

27 S.C. Juris. Mortgages § 173 (2011) *citing Union Nat'l Bank v. Cook,* 110 S.C. 99, 96 S.E. 484 (1918).

Debtor also cites the case of *In re Agard* in support of her argument that the mortgage does not pass with the note. While the applicable New York law cited in *In re Agard* appears to be similar to South Carolina's law, the relevant facts are substantially different from those in the current case. Unlike the case *sub judice,* the creditor in *In re Agard* did not produce the original note. The *In re Agard* court noted there was no evidence linking the original lender with the creditor. *In re Agard,* 444 B.R. at 239.

In the case *sub judice,* there is a direct link between the movant, HSBC, and the originating bank, Choice. Choice indorsed

the promissory note in blank and HSBC produced the original note and mortgage at the hearing. Debtor's counsel argues HSBC has failed to show it is in rightful possession of the note, but there is nothing in the record to support these assertions and I found Ms. St. Claire–Hougham's testimony of HSBC's possession of the original note, indorsed in blank, to be credible. In addition, the Bulk Continuing Loan Purchase Agreement and the Flow Loan Purchase Agreement directly link Choice and HSBC. Def.'s Ex. Nos. 3 and 4.[5] The Flow Purchase Agreement was executed in 2000, and recites that Choice may from time to time offer to sell and HSBC may opt to purchase various mortgage loans and the right to service the loans pursuant to the terms of the Flow Loan Agreement. Def.'s Ex. No. 4, ¶ 1. Furthermore, there is the supporting evidence of the transfers in connection with these agreements. Def.'s Ex. Nos. 5 and 7. So, unlike the creditor in *In re Agard* there is a direct link between Choice and HSBC in this case.

Debtor argues the actual assignments of the mortgage from MERS to HSBC are nullities because they were after Debtor and Choice filed their respective bankruptcy petitions. I disagree. There have been no allegations that the initial mortgage was not properly perfected when it was filed in the real estate records in 2005, or that it has become unperfected in the interim. As a result, the mortgage was properly perfected pre-petition. Therefore, to the Debtor, the post-petition assignment of the mortgage among creditors does not involve property of Debtor's bankruptcy estate. *See Kapila v. Atlantic Mortg. and Inv. Corp. (In re Halabi),* 184 F.3d 1335, 1337 (11th Cir. 1999); 11 U.S.C. § 541(d). This assignment is similar to the transfer of a claim among creditors and therefore I find such

5. *See* Amended Certificate of Authority with Name Change. Def.'s Ex. No. 8.

conduct does not violate the § 362 automatic stay in Debtor's case.

As for the fact that this assignment occurred after the filing of the Choice bankruptcy petition, I find Debtor lacks standing to challenge this in her chapter 13 case. Furthermore, the assignment was from MERS as nominee for Choice. Ms. St. Claire–Hougham testified this assignment was done during the foreclosure process to remove MERS out of the chain of title. The transfer from Choice to HSBC actually occurred in 2005 before either Debtor or Choice filed for bankruptcy. Def.'s Ex. No. 5.

The Mortgage lists MERS, as the nominee for Choice and Choice's successors and assigns. Def.'s Ex. No. 1. The mortgage secures the repayment of the loan and Debtor pledged the property to MERS as nominee for Choice (and Choice's successors and assigns). Def.'s Ex. No. 1, p. 2. Furthermore, the mortgage provides:

> [Debtor] understands and agrees that MERS holds only legal title to the interests granted by [Debtor] in [the mortgage], but, if necessary to comply with law or custom, MERS (as nominee for [Choice] and [Choice's] successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of [Choice] including, but not limited to, releasing and canceling this Security Interest.

Def.'s Ex. No. 1, p. 3. HSBC has been Choice's successor and assignee since 2005. For these reasons, I find HSBC is a proper party in interest authorized to assert a secured claim.

In addition, I find Ms. St. Claire–Hougham's testimony to be credible regarding the outstanding debt. Debtor's counsel complains that insufficient documentation is attached to the proof of claim. If a creditor failed to attach sufficient evidence to the proof of claim to establish the validity of its claim, the burden remains with the creditor to establish the validity and amount of its claim. *In re Bareford,* Chap. 13 Case No. 09–61072, *slip op.* —— (Bankr.S.D.Ga. August 3, 2010). In support of HSBC's claim, Ms. St. Claire–Hougham provided credible testimony of the debt and the loan history. Def.'s Ex. Nos. 9 and 12. Debtor failed to appear at the hearing to counter this testimony. Based upon Ms. St. Clair–Hougham's testimony, I find HSBC has presented sufficient evidence to establish its claim.

Finally, based upon these findings, I find HSBC is entitled to relief from the automatic stay. Debtor failed to appear at the hearing. Debtor does not reside at the property so it is not necessary for her reorganization. Debtor's schedules reflect there is no equity in the property and counsel concedes there is no equity. For these reasons, I find HSBC is entitled to relief from the automatic stay pursuant to 11 U.S.C. § 362(d).[6]

---

6. 11 U.S.C. § 362(d) states in pertinent part:
   (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
   (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
   (2) with respect to a stay of an act against property under subsection (a) of this section, if—
   (A) the debtor does not have an equity in such property; and
   (B) such property is not necessary to an effective reorganization. . . .

For these reasons, and the reasons set forth on the record at the hearing, Debtor's request for declaratory judgment, injunctive and equitable relief, including actual and punitive damages, is ORDERED DENIED. It is further order that HSBC's request for relief from the automatic stay is GRANTED with HSBC's claim numbers 2.0 and 2.1 stricken.[7] It is furthermore ORDERED that the stay of Bankruptcy Rule 4001(a)(3) shall not apply to the relief from the automatic stay.

---

7. At the hearing, HSBC agreed to waive any deficiency claim.