**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-1821**

JAMES P. SCHEIDER, JR.; TAFFY G. SCHEIDER,

    Plaintiffs – Appellants,

        v.

DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee of the
IndyMac INDA Mortgage Loan 2006-AR2 Mortgage Pass-Through
Certificates, Series 2006-AR2 under the Pooling and
Servicing Agreement dated August 1, 2006; INDYMAC MORTGAGE
SERVICES; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,
INCORPORATED; ONEWEST BANK, F.S.B.,

    Defendants – Appellees,

        and

INDYMAC BANK FEDERAL BANK; MERS, INCORPORATED; MORTGAGE
NETWORK INCORPORATED; INTERNAL REVENUE SERVICE; JOHN DOE
1-1000, inclusive, representing a class of unknown persons
who claim or have the right to claim an interest in certain
real property located in Beaufort County, South Carolina;
INDYMAC MBS INCORPORATED,

    Defendants.

Appeal from the United States District Court for the District of
South Carolina, at Beaufort.  Sol Blatt, Jr., Senior District
Judge.  (9:11-cv-00395-SB)

Argued: April 11, 2014              Decided: May 21, 2014

Before MOTZ, DIAZ, and FLOYD, Circuit Judges.

Affirmed by unpublished per curiam opinion.

---

**ARGUED**: Antonia T. Lucia, Roberts Vaux, VAUX & MARSCHER, PA, Bluffton, South Carolina, for Appellants. Jeffrey Michael Anderson, BRADLEY ARANT BOULT CUMMINGS LLP, Birmingham, Alabama, for Appellees. **ON BRIEF**: Mark S. Berglind, VAUX & MARSCHER, PA, Bluffton, South Carolina, for Appellants. B. Rush Smith, III, Brian P. Crotty, Sarah B. Nielsen, NELSON MULLINS RILEY & SCARBOROUGH LLP, Columbia, South Carolina; Marc James Ayers, BRADLEY ARANT BOULT CUMMINGS LLP, Birmingham, Alabama, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

James and Taffy Scheider stopped paying their mortgage in 2010. They believe that the securitization of their mortgage has relieved them of the obligation to pay. Accordingly, the Scheiders brought suit asserting a host of claims and seeking a declaratory judgment that the entities owning and servicing their mortgage could not enforce it. The district court disagreed, granting summary judgment to the defendants. Finding that securitization--a process to which the Scheiders were not party--cannot trump the law governing the mortgage documents themselves, we affirm.

I.

A.

In 2006, the Scheiders refinanced their South Carolina home. They signed an adjustable-rate note for $1.178 million plus interest, payable to the lender, Mortgage Network. The note, executed in South Carolina, provides that Mortgage Network is entitled to transfer the note and that "anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'" J.A. 251.

The Scheiders simultaneously executed a mortgage securing the note. The mortgage provides that Mortgage Electronic Registration Systems, Inc., commonly known as MERS, would act as

3

the nominee for Mortgage Network. The Scheiders "agree[d] that MERS holds only legal title to the interests granted by [the Scheiders] in this Security Instrument, but, if necessary to comply with law or custom, MERS . . . has the right . . . to foreclose and sell the Property; and to take any action required of Lender." J.A. 262. The mortgage is "governed by federal law and the law of the jurisdiction in which the Property is located." J.A. 268. The mortgage was recorded in Beaufort County, South Carolina.

Mortgage Network subsequently transferred the Scheiders' note--the first of several such transactions. At some point, Mortgage Network endorsed the note, writing "Pay to the order of _____ Without Recourse." J.A. 340. That blank was later filled with "IndyMac Bank F.S.B." J.A. 344. IndyMac Bank, FSB, then endorsed the note, writing simply "Pay To The Order Of" and "Without Recourse." J.A. 344.[1] The note is now in the possession of Deutsche Bank.

---

[1] The Scheiders argue that there are "three versions" of the note and express confusion as to which "version" is the real thing. The defendants have explained that the Joint Appendix contains three copies of the note from various points in time: the final "version" in the J.A., they aver, is simply a copy of the real note as it presently exists. The district court found that it "ha[d] been presented with multiple versions of the negotiable instrument" and thus "believe[d] that a genuine issue of material fact exists with respect to Deutsche Bank's foreclosure counterclaim." J.A. 417. We, however, find that the Scheiders have produced no evidence to support their bare
(Continued)

4

At least some of these transfers occurred during the securitization of the loan, which involved its transfer into a trust.[2]  That securitization was effectuated by a Pooling and Servicing Agreement, which is governed by New York law.  The Scheiders are not parties to the PSA.  Rather, the PSA provides that the depositor (at this point, IndyMac MBS) "will deliver to the Trustee [Deutsche Bank] within the time periods specified . . . [t]he original Mortgage Note, endorsed by manual or facsimile signature in blank in the following form: 'Pay to the order of _____ without recourse,' with all intervening endorsements showing a complete chain of endorsement from the originator to the Person endorsing the Mortgage Note."  J.A. 434.  According to the Scheiders, the "time period[] specified" is thirty days, ending on August 30, 2006.

The Scheiders also assert that, as a condition of its REMIC (real estate mortgage investment conduit) tax status, the trust

assertion that the later iterations of the note are somehow misleading.  In the absence of any basis for doubting the defendants' eminently reasonable explanation, we decline to find a "genuine dispute as to any material fact" regarding the note's negotiation. Fed. R. Civ. P. 56(a).

[2] In securitization, numerous mortgages are grouped together into a special purpose vehicle, such as a trust.  The vehicle then issues mortgage-backed securities to investors.  Some special purpose vehicles qualify as real estate mortgage investment conduits, or REMICs, which receive favorable tax treatment.

must receive all related mortgages within a three-month clean-up period, ending before December 2006. But MERS did not assign the mortgage to Deutsche Bank as trustee until August 2011.

Meanwhile, the Scheiders applied for a loan modification, but were found ineligible. In June 2010, the Scheiders stopped making their loan payments altogether.

B.

The Scheiders then filed suit in South Carolina state court. They raised an array of claims, including actions for a declaratory judgment and to quiet title, against the entities that held and serviced their mortgage. The defendants removed the case to federal court, invoking federal question jurisdiction. Deutsche Bank brought a foreclosure counterclaim.

The district court granted the defendants' motion for summary judgment as to all the Scheiders' claims. See Scheider v. Deutsche Bank Nat'l Trust Co., No. 9:11-cv-395-SB (D.S.C. Apr. 11, 2013). The court denied summary judgment as to the foreclosure counterclaim, which Deutsche Bank voluntarily dismissed without prejudice. The Scheiders moved for reconsideration, which the court denied. This appeal followed.

II.

The Scheiders argue primarily that the assignment of their mortgage five years after the trust's closing date violated the

6

terms of the PSA and is thus void.  As a result, they contend, Deutsche Bank does not properly own their mortgage and is unable to enforce it.[3]

But we need not evaluate the impact of the PSA.  Under South Carolina law and the terms of the instruments themselves, Deutsche Bank holds both the note and the mortgage.  As a result, once the Scheiders defaulted on their mortgage, the bank was entitled to enforce those instruments.  We need go no further in affirming the district court's judgment.

### A.

We review the district court's decision to grant summary judgment de novo.  Cosey v. Prudential Ins. Co. of Am., 735 F.3d 161, 170–71 (4th Cir. 2013).

### B.

We first determine the law that will guide our interpretation of the note and mortgage.  Where, as here, "a federal court addresses state law claims under its pendent jurisdiction," the court "must apply the choice of law rules of the state in which it sits"--in this case, South Carolina.  In

---

[3] As the district court noted, the Scheiders have admitted that if we "find[] that the bank has the right to foreclose, then their [other] claims would 'go out the window.'"  J.A. 417 n.5.

7

re Merritt Dredging Co., 839 F.2d 203, 205 (4th Cir. 1988). South Carolina law provides that

> when a transaction bears a reasonable relation to this State and also to another state or nation the parties may agree that the law either of this State or of another state or nation shall govern their rights and duties. Failing an agreement this title applies to transactions bearing an appropriate relation to this State.

S.C. Code § 36-1-105(1). "[T]o determine whether [a transaction] bears an 'appropriate relation' to South Carolina," we apply "the most significant relationship test." Merritt Dredging, 839 F.2d at 207.

In this case, the mortgage is expressly governed "by federal law and the law of the jurisdiction in which the Property is located"--South Carolina. J.A. 268. The note does not contain a governing-law provision, leading us to apply the most significant relationship test. Given that the Scheiders are South Carolina residents, their property is located in South Carolina, and the note was executed in South Carolina, the answer is clear. South Carolina law governs both instruments.

### C.

We next conclude that under South Carolina law, Deutsche Bank is the proper holder of the Scheiders' note. The bank undisputedly possesses the note, and that possession is reconcilable with the note's course of negotiation.

8

Under South Carolina law, "[i]f an indorsement is made by the holder of an instrument, whether payable to an identified person or payable to bearer, and the indorsement identifies a person to whom it makes the instrument payable, it is a 'special indorsement.' When specially indorsed, an instrument becomes payable to the identified person and may be negotiated only by the indorsement of that person." S.C. Code § 36-3-205(a).

If, however, the endorsement is not "special," it is a "blank endorsement." Id. § 36-3-205(b). "When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed." Id.

"The holder may convert a blank indorsement that consists only of a signature into a special indorsement by writing, above the signature of the indorser, words identifying the person to whom the instrument is made payable." Id. § 36-3-205(c). If, for instance, there is an instrument "on which the space for the name of the payee is left blank," it "is an instrument but it is incomplete." Id. § 36-3-115 cmt. 2. The instrument is still "enforceable in its incomplete form and it is payable to bearer because it does not state a payee." Id.

Analyzing similar Virginia statutes, we have concluded that "[t]he upshot of these provisions is clear." Horvath v. Bank of New York, N.A., 641 F.3d 617, 621 (4th Cir. 2011). That is,

9

"[n]egotiable instruments like mortgage notes that are endorsed in blank may be freely transferred.  And once transferred, the old adage about possession being nine-tenths of the law is, if anything, an understatement.  Whoever possesses an instrument endorsed in blank has full power to enforce it."  Id.

The language of the note itself accords with these statutes, providing that "anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'"  J.A. 251; see also Horvath, 641 F.3d at 622 (quoting identical language and explaining that "these provisions do little to suggest that the parties intended to depart from the Virginia code's permissive approach to transfers [but rather] suggest precisely the opposite").

The Scheiders' note was first endorsed in blank by the lender, Mortgage Network.  See J.A. 340.  Under South Carolina law, this act turned the note into bearer paper, negotiable by possession alone.  At some point, the blank was filled in with "IndyMac Bank F.S.B."  See J.A. 344.  The note then became order paper, and only IndyMac, FSB, could enforce it.  But IndyMac, FSB, then endorsed the note, again in blank--converting it to bearer paper once more.  See J.A. 344.  Thus, the note may be enforced by whoever possesses it, and it is undisputed that Deutsche Bank possesses it now.

10

D.

South Carolina has long upheld "the familiar and uncontroverted proposition . . . that the assignment of a note secured by a mortgage carries with it an assignment of the mortgage, but that the assignment of the mortgage alone does not carry with it an assignment of the note." Hahn v. Smith, 154 S.E. 112, 115 (S.C. 1930); see also Ballou v. Young, 20 S.E. 84, 85 (S.C. 1894) ("The transfer of a note carries with it a mortgage given to secure payment of such note."). Thus, because Deutsche Bank is the holder of the note, it is also the holder of the mortgage.

This, too, accords with our conclusions in Horvath. In response to Horvath's arguments that the note and mortgage should be viewed separately, we found that in Virginia "the deed of trust follows the note." 641 F.3d at 624. "Indeed," we opined, "common sense suggests that things could not be any other way." Id. If we permitted the split-the-note theory the Scheiders propose, "there would be little reason for notes to exist in the first place," as "[o]ne of the defining features of notes is their transferability." Id. The idea that "transferring a note would strip it from the security that gives it value and render the note largely worthless . . . cannot be-- and is not--the law." Id.

11

The Scheiders contend that this longstanding rule is unsuited to the complex securitization of mortgages so prevalent today. They cite to recent orders from South Carolina's trial courts suggesting that ownership of the note alone is insufficient to initiate a foreclosure. See Deutsche Bank Nat'l Trust Co. v. Heinrich, No. 2011-CP-10-1060 (S.C. Ct. Com. Pl. July 31, 2013); One West Bank, FSB v. Torrence, No. 2010-CP-32-4954 (S.C. Ct. Com. Pl. July 25, 2012). But we are not persuaded that these trial court opinions demonstrate that South Carolina has revisited its law on negotiable instruments--especially as its higher courts continue to apply it. See Bank of America, N.A. v. Draper, 746 S.E.2d 478, 481 (S.C. Ct. App. 2013) (citing Hahn and Ballou).

## E.

South Carolina law thus settles the question. As we explained in Horvath, the "note plainly constitutes a negotiable instrument under [South Carolina law]. That note was endorsed in blank, meaning it was bearer paper and enforceable by whoever possessed it. And [Deutsche Bank] possessed the note at the time it attempted to foreclose on the property. Therefore, once [the Scheiders] defaulted on the property, [South Carolina] law

12

straightforwardly allowed [Deutsche Bank] to take the actions that it did." 641 F.3d at 622 (internal citations omitted).[4]

## III.

For the foregoing reasons, we affirm the district court's judgment.

AFFIRMED

---

[4] The Scheiders contend that the PSA somehow overrides these principles. But they fail to explain "how a later agreement (the PSA)--to which the Debtor[s are] not a party--could alter the nature of the contract and instrument [they] executed . . . earlier." In re Walker, 466 B.R. 271, 284 (Bankr. E.D. Pa. 2012).